**PORTER | SCOTT**
A PROFESSIONAL CORPORATION
John R. Whitefleet, SBN213301
350 University Ave., Suite 200
Sacramento, California 95825
TEL: 916.929.1481
FAX: 916.927.3706

Attorneys for Defendants COUNTY OF STANISLAUS, ANGELA KELLEY, MELODY TRANTHAM, SALVADOR PEREZ, ANACANI ROCHA, MICHELLE SILVEIRA and TONYA LASTER

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY WHITE, an individual; A.W. and A.L.W., minors, by and through their Guardians,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF STANISLAUS, JOCELYN RENZI, an individual; ANGELA KELLEY, an individual; MELODY TRANTHAM, an individual; SALVADOR PEREZ, an individual ANACANI ROCHA, an individual; MICHELLE SILVEIRA, an individual; TONYA LASTER and DOES 1 through 10;<br><br>Defendants.<br>_____/ | CASE NO. 1:18-CV-01206-DAD-SAB<br><br>**DEFENDANTS COUNTY OF STANISLAUS, ANGELA KELLEY, MELODY TRANTHAM, SALVADOR PEREZ, ANACANI ROCHA, MICHELLE SILVEIRA AND TONYA LASTER'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**DATE: December 18, 2018**<br>**TIME: 9:30 a.m.**<br>**CTRM: 5**<br><br>Complaint Filed: 09/04/18 |

Defendants COUNTY OF STANISLAUS, ANGELA KELLEY, MELODY TRANTHAM, SALVADOR PEREZ, ANACANI ROCHA, MICHELLE SILVEIRA and TONYA LASTER ("Defendants") hereby move to dismiss Plaintiffs' Complaint and submit the following Memorandum of Points and Authorities in Support Thereof.

{01918039.DOCX}   1
**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

# I.

# INTRODUCTION

This case arises from the alleged removal of minor ALW from her mother after a complaint of a domestic squabble, and events thereafter. ALW was placed into foster care, and claims purported victimization due to some "inappropriate sexual activity" in the foster home, but was immediately removed. Later, overnight stays with her parents and younger half-sister AW allegedly resulted in AW being 'sexually abused' by ALW.

Plaintiffs claim certain defendants failed to alert the Juvenile Court of the initial 'sexual activity', and failed to warn Plaintiff WHITE before the overnight visits. Based thereon, Plaintiff ALW claims improper interviews, removal, physician's exams, placement, and reporting, in violation of numerous state regulations. These moving Defendants submit the facts specific to them are insufficient to state claims and/or Plaintiffs assert claims that are not viable as a matter of law.

# II.

# ALLEGATIONS OF COMPLAINT

For purposes of this motion, Defendants submit the salient allegations are as follows: In February 2016, Plaintiff ALW was living with her mother Justene Obrentz.[1] (Comp. ¶ 31). On February 3, 2016, Plaintiffs admit law enforcement was called regarding a domestic squabble and the matter referred to Stanislaus County Community Services. (Id.) On February 16, 2016, Defendant TRANTHAM interviewed ALW at her school without parental[2] knowledge. (Comp. ¶ 33). On February 23, 2016, Plaintiffs allege Defendants ROCHA, TRANTHAM and PEREZ "collectively made the decision to remove ALW" from the custody of the mother (Comp. ¶ 35), which was accomplished that same day by Defendants TRANTHAM and PEREZ without a warrant. (Comp. ¶36). Plaintiff ALW alleges that she was not in imminent risk of serious bodily injury. (Id).

---

[1] Ms. Obrentz is not a party.

[2] Plaintiff WHITE fails to allege he had any legal or physical custody of ALW, nor an active relationship with ALW in February 2016.

{01918039.DOCX} 2

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

On February 26, 2016, Plaintiffs allege Defendant ROCHA stated in the Detention Report to the juvenile court that Ms. Obrentz did not know the identity or location of Plaintiff WHITE when she in fact did.[3]  (Comp. ¶38).  Plaintiffs complain that Defendants ROCHA, TRANTHAM and PEREZ did not inquire about Plaintiff WHITE.  (Comp. ¶s 39, 42).

On June 6, 2016, the court took jurisdiction over Plaintiff ALW (Comp. ¶ 45).  In foster care, Plaintiff ALW alleges that she was present during "inappropriate sexual activity." (Comp. ¶ 50).  It is unclear if Plaintiffs are claiming she was the victim or perpetrator.  See Comp. ¶61 ("…ALW had engaged in or [had] been a victim of sexualized behavior").  Regardless, upon discovery and reporting of the alleged behavior, ALW was removed from the foster home 'that same day.'  (Comp. ¶51).  Nonetheless, Defendant KELLEY allegedly failed to 'properly investigate' the alleged sexual abuse. (Comp. ¶ 55).   On the one hand, Plaintiffs complain 'no steps' were taken to provide her 'treatment,' (Comp. ¶51), and on the other admits that she was provided counseling. (Comp. ¶64).  Plaintiffs complain that Defendant KELLEY failed to inform the court ALW was present during said 'sexual activity' or that Defendant KELLEY misled the court of the basis for the therapy by omitting it. (Comp. ¶s64, 68).

In May 2017, ALW commenced overnight visits with Plaintiff WHITE and her younger sister AW.  (Comp. ¶72)  Plaintiffs complain an 'appropriate risk assessment' was not performed regarding alleged 'risk of harm posed to his family by allowing ALW' in [Plaintiff WHITE's] home." (Comp. ¶74).  In June 2017, ALW is alleged reported to have "sexually abused" her younger sister AW.  (Comp. ¶76).  Nonetheless, in October 2017, the court 'formally placed ALW' with Plaintiff WHITE.  (Comp. ¶81).  On April 17, 2018, the court granted Plaintiff WHITE custody of ALW.  (Comp. ¶84).  On May 18, 2018, Defendant LASTER is alleged to have interviewed ALW at her school without prior consent of Plaintiff WHITE.  (Comp. ¶85).

Based thereon, Plaintiff ALW asserts violations of the First and Fourth Amendments, and all Plaintiffs assert Fourteenth Amendment violations, as well as state law claims for intentional infliction of emotional distress, and negligence.

---

[3] This is partially contradicted by ALW, who appears to admit her mother claimed to not know WHITE's location (Comp. ¶ 46)

{01918039.DOCX} 3
**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

# III.

# LEGAL STANDARD APPLICABLE TO MOTIONS TO DISMISS

To survive a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a plaintiff must make a "short and plain statement" providing "enough facts to state a claim for relief that is plausible on its face." Bell Atl. v. Twombly, 550 U.S. 544 (2007) (quoting Rule 8(a)(2)).  Survival requires more than a statement that is merely consistent with a valid theory of recovery.  Id.  Rather, the statement must include "enough factual matter (taken as true) to suggest" a right to relief.  Id. (parentheses in original).  In other words, the statement must have "enough heft to show that the pleader is entitled to relief" and must "raise a right to relief above a speculative level."  Id.  A motion to dismiss also is appropriate where a plaintiff discloses some absolute defense or bar to recovery in his pleading.  Fed. R. Civ. P. 12(b)(6); Quiller v. Barclays American Credit Inc., 727 F.2d 1067, 1069 (11th Cir. 1984).  Mere "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss."  Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998).  Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

# IV.

# ARGUMENT

## A. The First Amendment Claim is Really a Fourth Amendment Claim and Redundant to the Second Claim for Relief

The first claim asserts a violation of 'familial association' under the First Amendment, but the gravamen of the allegations appear to arise from the removal of ALW, not from familial association.

In that regard, courts have evaluated such claims of violation of familial association under the Fourth Amendment, not the First or Fourteenth.  See Keates v. Koile, 883 F.3d 1228, 1236 (9th Cir. 2018) (noting all three amendments have been used, but holding "[w]e evaluate the claims of children who are taken into state custody under the Fourth Amendment right to be free from unreasonable seizures rather than the Fourteenth Amendment right to familial association."

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

quoting Kirkpatrick v. County of Washoe, 792 F.3d 1184, 1189 (9th Cir. 2015), on reh'g en banc, 843 F.3d 784 (9th Cir. 2016) see also Wallis v. Spencer, 202 F.3d 1126, 1137 n.8 (9th Cir. 2000) (holding that the childrens' claims "should properly be assessed under the Fourth Amendment" because "the same legal standard applies in evaluating Fourth and Fourteenth Amendment claims for the removal of children.")  Thus, since Plaintiff ALW asserts a claim under the Fourth Amendment in the second claim for relief, the first claim is not proper and/or redundant to the second claim.  Therefore, the motion should be granted.

**B.   Defendants TRANTHAM, PEREZ and ROCHA are Entitled to Qualified Immunity for the School Interviews**

In the second claim for relief, Plaintiff ALW alleges the February 16, 2016 and May 18, 2018 interviews at school violated the Fourth Amendment.  Defendants TRANTHAM, PEREZ and ROCHA submit qualified immunity applies.

Plaintiff ALW appears to admit there was a complaint on February 3, 2016, regarding Justene Orbrentz and law enforcement referred the matter to CSA.  The allegations are that ALW was later 'detained' and interviewed at the school.  Plaintiff ALW later appears to admit some allegations of sexual activity.  Assuming that an interview is a detention, Defendants submit that such claims are not clearly established as violations such that qualified immunity should apply.

The reasonableness standard articulated in New Jersey v. T.L.O., 469 U.S. 325, 341-42 (1985), applies for seizures of a school student.  Under the T.L.O. standard, the reasonableness of the detention is evaluated using a two-step inquiry: (1) was the action justified at its inception and (2) was the action conducted "reasonably related in scope to the circumstances which justified interference in the first place."  Id. at 341. (citations omitted).  See e.g. Gray ex rel. Alexander v. Bostic, 458 F.3d 1295 (11th Cir. 2006), cert. denied, 550 U.S. 956 (2007) (applying T.L.O. standard for school officer who took student aside and handcuffed to investigate threats to p.e. teacher made in front of officer).  See also C.B. v. Sonora Sch. Dist., 691 F.Supp. 2d 1170 (E.D.CA 2010) (applying same standard to handcuffed minor for disturbance).

///
///

{01918039.DOCX}   5
**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Even assuming social workers' interview constituted a seizure within the meaning of the Fourth Amendment, the right at issue was not clearly established at the time of the interviews. See e.g. Capp v. Cty. of San Diego, No. 2017 WL 1400148, at *5 (S.D. Cal. Apr. 19, 2017) (granting qualified immunity to social worker who conducted interview of minors at school, assuming such was a 'seizure' for purpose of the Fourth Amendment, noting prior Ninth Circuit decisions were vacated by the Supreme Court); and McManus v. Cnty. of San Diego, 2016 WL 3552007, at * 4 (S.D. Cal. June 30, 2016) (right not clearly established when a 14-year-old minor is removed from school and interviewed in the course of a child abuse investigation without the parent's consent, a court order, or exigent circumstances"); Mann v. Cnty. of San Diego, 2013 WL 4046642, at *10 (S.D. Cal. Aug. 8, 2013) (finding defendants entitled to qualified immunity for social worker's brief, voluntary interview of a suspected child-abuse victim at school).  Accordingly, Defendants TRANTHAM, PEREZ and ROCHA submit qualified immunity applies and these claims against them should be dismissed.

**C.     The Third Claim for Violation of the Fourteenth Amendment Fails as a Matter of Law**

In the Third claim, Plaintiffs each assert a violation of the Fourteenth Amendment against all defendants.  These claims fail to state sufficient facts.

To violate due process, state officials must act with such deliberate indifference to the liberty interest that their actions "shock the conscience."  Tamas v. Dep't of Soc. & Health Servs., 630 F.3d 833, 844 (9th Cir. 2010) citing Brittain v. Hansen, 451 F.3d 982, 991 (9th Cir.2006) (citation omitted).  Conduct that "shocks the conscience" is "deliberate indifference to a known or so obvious as to imply knowledge of, danger."

As a threshold matter, Plaintiff ANTHONY WHITE has no standing to assert such a claim. He was not granted legal or physical custody of ALW until June 2017, and the alleged sexual activity occurred prior thereto when he had no legal interest.  Otherwise, the harm is not specific to him.

As to all other defendants KELLEY, TRANTHAM, PEREZ, ROCHA, SILVEIRA and LASTER, there are no allegations that any defendant was aware of some risk and ignored it for

{01918039.DOCX}                                        6
**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

placement of ALW in the first foster home. In other words, there are no allegations of some known risk by each defendants prior to placemen in foster home that created a risk to ALW. To the contrary, it appears ALW concedes immediate action was taken. (Comp. ¶ 51 )(admitting she was removed that same day from foster care once alerted to inappropriate contact).

Moreover, because Plaintiff ALW confusingly asserts both a victim of sexualized activity, or perpetrator, it is unclear what purported risk of harm would be present to Plaintiff AW. Equally important, it is not clear which defendant Plaintiffs claimed knew of some risk of harm.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege an actual connection between the actions of the named defendants and the alleged deprivations. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

Here, every prior allegation is 'incorporated by reference', into each claim. Such a shotgun pleading – that which incorporates each preceding paragraph regardless of relevancy – is a form of pleading that violates Fed. R. Civ. P. 8(a)(1). See e.g. Byrne v. Nezhat, 261 F.3d 1075, 1129-1130 (11th Cir. 2001). Such forces Defendants to sift and cull through each and every paragraph and speculate what allegations are relevant to which defendant for a particular claim for relief.

This is further compounded by the claimed state law violations, but which cannot form the basis for imposing § 1983 liability. See, e.g., Windle v. City of Marion, Ind., 321 F.3d 658, 662-63 (7th Cir. 2003); White v. Olig, 56 F.3d 817, 820 (7th Cir.1995) ("It is therefore a truism, reiterated many times by this court, that mere allegations of state law infraction are insufficient to

{01918039.DOCX}                                      7
**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

support a Section 1983 claim."). Throughout the complaint Plaintiffs liberally sprinkle such state law violations, and are 'incorporated' therein, but also use language similar to state law. (See e.g. Comp. ¶135, referring to "negligence."). For each of the foregoing reasons, the motion should be granted.

### D. The Fourth Claim for Violation of the Fourteenth Amendment Fails to State Sufficient Facts

In the fourth claim, Plaintiffs alleges various court reports contained lies or omitted 'exculpatory evidence.' As a threshold matter, Plaintiff ANTHONY WHITE has no standing to assert such a claim.

Regardless, "[s]ocial workers have absolute immunity when they make 'discretionary, quasi-prosecutorial decisions to institute court dependency proceedings to take custody away from parents.'" Beltran v. Santa Clara County, 514 F.3d 906, 908 (9th Cir. 2008) (quoting Miller v. Gammie, 335 F.3d 889, 896 (9th Cir. 2008); The scope of this immunity is akin to the scope of absolute prosecutorial immunity, which applies to conduct "intimately associated with the judicial phase of the criminal process," Imbler v. Pachtman, 424 U.S. 409, 430 (1976).

A social worker acts as a legal advocate when initiating court proceedings, filing child-abuse complaints, and testifying under oath. (Holloway v. Brush, 220 F.3d 767, 775 (6th Cir.2000)). This absolute immunity holds, even under allegations that the social worker intentionally misrepresented facts to the family court. Id. at 723–25 (holding that a social worker accused of making numerous misrepresentations in a child-abuse complaint and two supporting affidavits enjoyed absolute immunity because she was acting "in her capacity as a legal advocate" when she submitted those documents). Absolute immunity enables social workers to "protect the health and well-being of the children…without the worry of intimidation and harassment from dissatisfied parents." Id. at 725 (quoting Kurzawa v. Mueller, 732 F.2d 1456, 1458 (6th Cir.1984)).

The Supreme Court vacated the Fourth Amendment holding of Greene v. Camreta, 588 F.3d 1011 (9th Cir. 2009), vacated in part, 563 U.S. 692 (2011), thus has no precedential affect. Regardless, the 'judicial depiction' portion of that case was regarding alleged false statements to

obtain a warrant/removal order from the home, which would appear irrelevant because no warrant is alleged here.

Otherwise, the allegations appear to arise from alleged 'prolonged detention' of ALW from Mr. WHITE's care, which appears to arise from the dependency petition or other reports filed, for which absolute immunity applies.  (Comp. ¶ 145.)  Plaintiff relies on Hardwick v. County of Orange, 844 F.3d 1112 (9th Cir. 2017), but that case is distinguishable.  The court in that case first confirmed that social workers enjoy absolute immunity for discharging functions that have a close nexus with the judicial process and involve the exercise of discretion to resolve disputes.  In the end, the court found that the facts of the case fell "outside of the social workers' legitimate role as quasi-prosecutorial advocates in presenting the case", in large part because the California Court of Appeal had already reviewed the facts in Hardwick, and found there was sufficient evidence "to demonstrate the social workers committed egregious acts of misconduct" and the County of Orange had conceded its "social workers lied and fabricated evidence."  Here, there are no such allegations of findings by a state court of false testimony or evidence.

Regardless, there are insufficient facts to support a claim that the individual Defendants' actions rise to the level of such egregious misconduct to abrogate their immunity.  Accordingly, the Motion to Dismiss should be granted.

**E.    The Monell Claim Fails to State Sufficient Facts**

Plaintiffs separately assert Monell-type liability in the fifth claim, pointing to claimed 'failures' as set forth in Paragraph 153 a-i.

Public entities are not vicariously liable for the actions of their employees under section 1983.  See Monell v. Dep't of Soc. Servs. of City of New York ("Monell"), 436 U.S. 658, 691–94 (1978); City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989).  Municipal liability arises only when the plaintiff shows: (1) the deprivation of a constitutional right; (2) the municipality has a policy; (3) the policy amounts to deliberate indifference to plaintiff's constitutional rights; and (4) the policy is the moving force behind the constitutional violation.  See City of Canton, Ohio, supra, 489 U.S. at 389; Oviatt By & Through Waugh v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992).

However, each of the purported deficiencies all arise out of this single incident. Accordingly, Plaintiffs fail to state sufficient facts of an alleged unconstitutional custom or policy. See Navarro v. Block, 72 F.3d 712, 714 (9th Cir. 1995) ("Proof of random acts or isolated events is insufficient to establish custom.").

In addition, some alleged deficiencies do not appear to apply or rise to any alleged constitutional violation. See e.g. Comp ¶53(f) ("retaliating against individuals who exercise their constitutional right to object to .the actions of the County…."), and ¶ 53(i) "not searching for absent parents…" or appear to be based on state law. Accordingly, Defendants submit insufficient notice under Rule 8 of the Federal Rules of Civil Procedure has been provided as to what alleged policy and for what constitutional violation for purposes of Monell. Therefore, the motion should be granted.

## F.     The Intentional Infliction of Emotional Distress Claim Fails to State Sufficient Facts

A cognizable cause of action for intentional infliction of emotional distress exists only where the facts reflect " (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.", Hughes v. Pair, 46 Cal. 4th 1035, 1050 (2009)  Here, because of the shotgun style pleadings and generalized allegations in this claim, it is entirely unclear against which Defendants, and for what conduct, Plaintiffs assert this claim. Accordingly, this claim should be dismissed.

## G.     The Negligence Claim Fails to State sufficient Facts.

Plaintiffs assert a whole host of 'mandatory duties' (Comp. ¶s 175-181) but fail to delineate what conduct any Defendant is claimed to have breached. Instead, Plaintiffs merely list the claimed duties and claim all Defendants breached said duties.

///

///

///

{01918039.DOCX}     10
**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Plaintiff must establish the enactment imposes a mandatory, as opposed to discretionary duty, intend to protect against the risk of the kind of injury suffered by the plaintiff; and the breach must be a proximate cause of the plaintiff's injury. Haggis v. City of Los Angeles, 22 Cal. 4th 490, 499 (2000). A statute gives rise to a mandatory duty on a public official only if the statute affirmatively requires that a particular action be taken and provides implementing guidelines or rules. O'Toole v. Superior Court, 140 Cal. 4th 488, 510 (2006). In addition, the plaintiff must show the injury is "one of the consequences which the [enacting body] sought to prevent through imposing the alleged mandatory duty." Haggis, 22 Cal. 4th 490 at 499 citing Hoff v. Vacaville Unified School Dist., 19 Cal. 4th 925, 939 (1998). "That the enactment 'confers some benefit' on the class to which plaintiff belongs is not enough; if the benefit is 'incidental' to the enactment's protective purpose, the enactment cannot serve as a predicate for liability under section 815.6." Haggis, 22 Cal. 4th 490 at 499.

Indeed, courts have expressly rejected finding a mandatory duty based on prior versions of the Manual that sections are purportedly designed to prevent sexual abuse. See e.g. County of Los Angeles v. Superior Court, 102 Cal. App. 4th 627, 643 (2002) (rejecting several sections of the DSS Manual and creating mandatory duties to prevent sexual abuse, noting that "Placement and supervision are functions involving the exercise of discretion. A county is not the insurer of a child's physical and emotional condition, growth and development while in foster care placement."). See also Ortega v. Sacramento Dept. Of Health and Human Services, 161 Cal. App. 4th 713, 728 (2008), where the court found that DSS Regulation 31-125 did not impose a mandatory duty because it was not ministerial and instead "involve[d] a formidable amount of discretion."

Defendants submit the allegations are insufficient notice under Rule 8 of the Federal Rules of Civil Procedure of the basis for the negligence claims. Accordingly, this claim should be dismissed.

///

///

{01918039.DOCX}                                11
**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**V.**

**CONCLUSION**

For each of the foregoing reasons, Defendants respectfully request that their Motion to Dismiss be granted.

Respectfully submitted,

Dated:  November 8, 2018

PORTER SCOTT
A PROFESSIONAL CORPORATION


By  /s/ John R. Whitefleet
    John R. Whitefleet
    Attorneys for Defendants

{01918039.DOCX}

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**